FRANK ZUBIETA, Appellant, *v.*
ADA M. TARNER, Respondent.

No. 4204

May 6, 1960                                                351 P.2d 982

*Gray and Young,* of Reno, for Appellant.

*Goldwater, Taber and Hill,* of Reno, for Respondent.

## OPINION

By the Court, McNamee, C. J.:

This is a statutory action[1] to quiet title to .4 acre of land in Washoe County, Nevada. The parcel results from overlapping of descriptions in the deeds to respondent and to appellant and to his predecessors in interest.

Respondent and her husband acquired 9.5 acres of land which embodied said disputed .4 acre from one Wogan in 1915. The metes and bounds description in the deed located the south and east boundary of the land along the north and west bank of the North Truckee Irrigation Ditch. The respondent and her husband moved on the land in 1916, at which time a survey was made and a fence erected along said boundary line on the north and west bank of said ditch. In 1919 they acquired an adjoining 9.5 acres. From 1916 to the commencement of this action the property was occupied and used by respondent, her husband, and their lessee in the operation of a dairy, for grazing and pasturing cattle,

---

[1]The action is brought pursuant to the provisions of NRS 40.090, 40.100, and 40.110. The remedy provided by these provisions is cumulative and is not exclusive of the remedy which a district court in this state, exercising equity jurisdiction, may allow. NRS 40.120.

for training hunting dogs, and for raising fish. The fence was still standing and in existence at the time of the trial.

In 1932 appellant purchased land lying south and east of the North Truckee Irrigation Ditch. The description in appellant's deed is by lot and block number in the Prater Addition to Sparks, Nevada. That the description in appellant's deed overlapped the description in respondent's deed to the extent of said disputed .4 acre was unknown to the parties until a survey was made in 1956. Prior to this survey appellant asserted no claim to the disputed area and recognized respondent's right of possession to all land on her side of the fence.

Appellant's chain of title extends back to 1907, some eight years prior to the commencement of respondent's chain of title.

During the periods of their ownership both appellant and respondent or their privies paid all taxes assessed against the property described in their deeds with the result that there was a double assessment and double payment of taxes with respect to said .4 acre.

From the foregoing and other evidence the lower court found that respondent was the owner of the disputed parcel and entered judgment quieting her title to the same against appellant. This appeal is from said judgment.

The only issue involved herein is whether respondent had met the statutory requirements of adverse possession.

Subsection 1 of NRS 40.090 provides: "An action may be brought to determine the adverse claims to and clouds upon title to real property by a person who, by himself, or by himself and his predecessors in interest, has been in the actual, exclusive and adverse possession of such property continuously for more than 15 years prior to the filing of the complaint, claiming to own the same in fee, or by any other freehold estate, against the whole world, and who has by himself or his predecessors in interest, paid all taxes of every kind levied or assessed and due against the property during the period of 5 years next preceding the filing of the complaint. The

action shall be commenced by the filing of a verified complaint averring the matters above enumerated."

The question of whether or not respondent and those in privity with her had actual, exclusive and adverse possession of said property continuously for more than 15 years prior to the filing of the complaint was a question of fact resolved against the appellant by the trial court. There is substantial evidence to support that court's finding in this regard.

Even if such be true, appellant maintains that respondent did not claim more land than that which originally she and her husband were legally entitled, and consequently for the required period of 15 years they did not claim "to own the same in fee." This assertion is based on the testimony of respondent that her intention was to claim only the land that legally belonged to her and her husband. From other testimony of the respondent it appears, and the trial court so found, that during the entire period of her possession she claimed all of the land she held in possession, which was the same land described in her deed and enclosed within her fence. This assertion of appellant is therefore without merit.

Appellant's chief ground for reversal appears to be his contention that respondent did not pay all of the taxes levied against the property during the period of five years next preceding the filing of the complaint.

It is conceded that respondent and her privies paid all the taxes levied against the property which were assessed to them, but appellant argues that inasmuch as there was double taxation on the said .4 acre, respondent has not paid the taxes on the .4 acre which were assessed to appellant and therefore she has not paid "all taxes of every kind levied or assessed and due against the property" as required by NRS 40.090.

A similar question was before the California Supreme Court in the case of Cavanaugh v. Jackson, 99 Cal. 672, 34 P. 509. There in a suit for the recovery of real property, the defendant set up title by adverse possession for

the time prescribed by statute. The California statute like the Nevada statute provided that the party in adverse possession must pay all the taxes which have been levied and assessed upon such lands. The same land in that case was assessed each year both to plaintiff and defendant and as a result of such assessments both parties paid the amounts of their respective assessments. The court affirmed the judgment in favor of defendant and in its majority opinion said:

"As an element entering into the creation of defendant's title, the payment of all taxes levied upon the land during the five years' term of occupation is necessary, but it was never intended by the lawmaking power that he should pay the taxes for any stated year more than once. Having had the land assessed to him, and having paid the taxes levied thereon, we think he has fulfilled the conditions of the statute, and that it is immaterial as to the number of times the land may have been assessed to, and the taxes paid by, other parties. * * * Illinois has a provision of law quite similar to the one under present investigation, and it is there held (Bolden v. Sherman, 101 Ill. 489) that, in case of double payment of the taxes for any one year, priority of payment prevails. * * * But in Brown v. Clark, 89 Cal. 196, 26 Pac.Rep. 801, this court declined to follow that rule, and neither are we, in the present case, willing to hold that priority of payment by the true owner of itself nullifies the time which has actually run, and starts anew the statute. We see no great necessity for the enactment of the provision in the first instance. If for the purpose of giving notice to the true owner that, perchance, an adverse claimant has appeared upon the scene, his payment of the taxes as notice of that fact is entirely insignificant when compared to the circumstance of his open and notorious possession of the land. Whatever may be the object and purpose of the law, it should receive a reasonable construction, and to hold that priority of payment by the true owner of itself defeats the occupant's plea of the statute of limitations would be an unreasonable construction. If such were the law, upon the first day that taxes became due and payable

it would result in a scramble at, or a race to, the tax collector's office by the respective parties to secure priority of payment. The destruction of old titles and the creation of new ones would thus be dependent upon the strongest man or fleetest horse." Accord: Owsley v. Matson, 156 Cal. 401, 104 P. 983; Cummings v. Laughlin, 173 Cal. 561, 160 P. 833; Pereira Farms Corporation v. Simas, 69 Cal.App. 159, 230 P. 976; Bell v. Germain, 12 Cal.App. 375, 107 P. 630; Kendrick v. Klein, 65 Cal.App.2d 491, 150 P.2d 955; Hobson v. Miller, 64 N.M. 215, 326 P.2d 1095.

There has been some criticism of the decision in the Cavanaugh case (Commercial Nat. Bank v. Schlitz, 6 Cal.App. 174, 91 P. 750; Carpenter v. Lewis, 119 Cal. 18, 50 P. 925) but it is now settled law in California, the conflict that existed in prior decisions having been resolved in Owsley v. Matson, supra, which held that the adverse claimant's compliance with the applicable statute depends only upon a showing that he paid the taxes for the years in question, and that a prior or subsequent payment by the legal owner is of no consequence.

We are in accord with the decisions in the Cavanaugh and Owsley cases. It must be noted, however, that these two cases as well as the present case involved a double assessment as well as a double payment. We express no opinion at this time whether the holdings in those cases, insofar as the priority rule of payment is concerned, would be applicable to cases of a single assessment with double payment of taxes. See 20 Calif. L. Rev. 436–438 (1931–1932).

Appellant further contends that because NRS 40.090 required respondent to have paid all taxes of every kind levied or assessed and due against the property during the five-year period, and since the evidence showed that during this period personal property taxes and certain water taxes were assessed against appellant and not paid by respondent and that such taxes became a lien

against appellant's real property, such personal property taxes and water taxes were "levied or assessed and due against the property." However, we reject the contention that the statutory requirement that the respondent pay all taxes of every kind levied or assessed and due against the property includes the taxes on appellant's personal property and the water tax assessed for the use of water on other property of appellant. Such personal property and water taxes were not levied or assessed against the real property. That they became a lien upon all of appellant's real property amounts to nothing more than providing a better or surer method of collection.

Judgment affirmed.

BADT and PIKE, JJ., concur.